## MILLS v. TUKEY.

A DEPUTY Sheriff may, after the expiration of the term of office of his principal and in the absence of the latter from the State, execute a deed to the purchaser at a judicial sale, made by the Sheriff while in office. The authority of the deputy is not impaired by the Act of 1858, allowing the deed in such cases to be executed by the succeeding Sheriff.

Under the fifth section of the Act of April 3d, 1858, providing for the collection of delinquent taxes in Sacramento, the purchaser at a tax sale made in pursuance of the act, is entitled to a writ of assistance against the person in possession of the premises, notwithstanding the existence of such fiduciary relations between the parties at the time of the sale, that a Court of Equity would hold the purchaser a trustee for the possessor in the purchase, on the ground of constructive fraud.

As a general rule, neither a tenant in common, nor a mortgagee, can acquire a tax title and set it up as against his co-tenant or mortgagor, but this rule rests upon the doctrine of constructive frauds, and is not applicable in a case where, by statute, the deed can only be attacked for actual fraud.

APPEAL from the Sixth Judicial District.

Application by D. O. Mills for a writ of assistance to obtain possession of an equal undivided one-third interest in and to lot number four, in the block or square between J and K streets, and Fourth and Fifth streets, of the City of Sacramento. The proceeding in the Court below was instituted under and by virtue of Sec. 5 of an Act of the Legislature, passed April 3d, 1860, entitled " An Act to provide for the collection of Delinquent Taxes in the

City and County of Sacramento." In 1859, the lot in question belonged to Judson Haycock and George B. Haycock, as owners of one-third; to Carsilla Tukey, as owner of one-third; and to Francis Tukey, the defendant, as owner of one-third thereof. The taxes assessed upon it for the fiscal year ending March 1st, 1859, amounting, with costs and charges, to $2,844 35, not having been paid by these parties, judgment for that sum was recovered against them, by virtue of the statute above mentioned, on the twelfth day of November, 1860, in the District Court of the Sixth Judicial District, in favor of The People of the State of California. Under this judgment, execution was issued against the said parties, directed to the Sheriff of the City and County of Sacramento, commanding him to make the said sum of money out of their personal, or, if that were insufficient, out of their real estate. He levied upon and sold the premises above described on the twenty-third day of September, 1861, to D. O. Mills, for $2,832 90, and delivered to him a certificate of sale thereof. Afterwards, on the fourteenth day of April, 1862, more than six months having elapsed since said sale, and the term of office of the Sheriff having expired, and he having left the State, a deed was executed to Mills by B. B. Redding, who was the deputy of said Sheriff up to the expiration of his term of office. At and prior to the time when the judgment for taxes was recovered, D. O. Mills held a mortgage for $6,000 on the above premises, one-third whereof, $2,000, was due from the defendant, Francis Tukey. After the recovery of said judgment, but before the sale thereunder, D. O. Mills became, by purchase, the owner of the one-third interest in said premises which belonged to Judson and George B. Haycock. When the property was bought by D. O. Mills at the Sheriff's sale, he and the said Carsilla Tukey and the defendant, Francis Tukey, were, and have ever since remained, in possession, each of a third of the premises. The claim of D. O. Mills to the one-third interest of Carsilla Tukey having been satisfactorily adjusted, and the defendant having refused to surrender possession of the third held by him, this proceeding was instituted for its recovery. Prior to the sale of the premises for taxes, to wit: on the eighteenth day of July, 1861— Francis Tukey, then being indebted to D. O. Mills in the sum of

Mills v. Tukey.

$2,000 on the mortgage aforesaid, and in other sums of money, and desiring to procure a loan of $4,000 to cancel said indebtedness, and also enable him to pay his proportion of the said taxes, proposed to said D. O. Mills that the latter should temporarily take from him a mortgage for $4,000 upon his third interest in said premises, and assign said mortgage to the party from whom said Tukey should afterwards be able to procure said loan. To this proposition, as Tukey believed he could in this way obtain the loan, Mills assented, and the $4,000 mortgage was executed to him. Tukey failed to either obtain the $4,000 loan, or to pay the taxes, wherefore the property was sold, and the $4,000 mortgage still remains in Mills' hands unassigned. Upon these facts appearing in the petition and answer, and from the evidence on the trial, the District Court ordered the writ of assistance to issue. Defendant moved for a new trial, which was denied, and from these orders he appeals.

*Crocker & Robinson*, for Appellant.

I. The Act of the Legislature passed 1858 (See Acts 1858, 95), says that a deed in pursuance of a sale made by an ex-Sheriff who is out of the State, shall or may be made by his successor. The word " may," when applied to the act of an officer, is always construed " shall," and here the word " shall " is also used, showing conclusively that it was intended to confer the power exclusively upon the succeeding officer. (Sedg. 438.) This statute provides a new remedy for a defect which existed in the law, which by implication repeals the old law as to the Sheriff, Marshall, and places the right and power in another place, where it alone can be exercised. (Sedg. on Con. and Stat. L. 124–126 ; 10 Pick. 38, 39.)

II. Mills being tenant in common with Tukey, could not purchase the tax title for his own exclusive benefit, but held it in trust for his co-tenants. Community of interest provides a community of duty, and one tenant in common cannot pay up an outstanding incumbrance on an adverse title to disseize and expel his co-tenant. *Van Horne* v. *Fondu* (5 J. C. 407) is very full and clear on this point. (See, also, 6 Dana, 278, 171 ; 3 Id. 324 ; 4 Mon. 298 ; 1 McMul. 370, to the same point ; also, 1 Wash. R. P. 430 ; 9

Mills *v.* Tukey.

Dana, 228 ; 1 A. K. Marsh. 230 ; *Burhaus* v. *Van Zandt,* 3 Seld. 523 ; *Eyre* v. *Dolphin,* 2 Ball & Bealty, 290, 298.)

III.    Mills being mortgagee, cannot set up the tax title as against Tukey, his mortgagor, but must include it as an advance under his mortgage.    (2 Ball & Bealty, 290, 298 ; 1 Ch. Cas. 191 ; *Godfrey* v. *Watson,* 3 Atk. 517, 518 ; 4 Kent, 198 ; Id. 190 ; 1 Pow. on Mort. 195 and note *n ;* 1 Wash. R. P. 583 ; 1 Hill. 437 ; Id. 436.)    The rights of a mortgagor cannot be affected by a fine or a non-claim—or a recovery suffered by the mortgagee, for in equity the latter holds the estate only as security for the debt, and when paid he will be but a trustee for the mortgagor.    (1 Pow. on Mort. 212, *a.*)

IV.    Mills was in possession as tenant in common, and was therefore bound to pay the taxes ; and his neglecting to pay them, and taking a tax deed, will give him no aditional title.    The statute makes it the duty of the party in possession, to pay the taxes if the owner does not, and he can derive no benefit from a failure to pay them, thus suffering the property to be sold and buying it in.    In equity, the purchase would be merely an advance. (*Kelsey* v. *Abbot,* 13 Cal. 619 ; 13 Penn., Stan., 322, 327 ; 5 Haywood, 294 ; 11 Ill. 300.)

V.    The facts show actual fraud on the part of Mills, and this renders the sale void.

*J. W. Winans,* for respondent.

I.    The deed from Redding, Deputy Sheriff, to D. O. Mills, was in all respects regular and sufficient to pass title.    (*Wood* v. *Calvin,* 5 Hill, 231 ; *Tuttle* v. *Jackson,* 6 Wend. 224 ; *Jackson* v. *Collins,* 3 Cow. 95.)

The deputy's authority is not taken away by the Statute of 1853.    This case comes directly within the operation of the rule, that where a right exists at common law and a new remedy is given by statute, the latter is cumulative, and either remedy may be pursued ; but where the right and the remedy both are given by statute, that remedy can alone be pursued.    (*People* v. *Craycroft,* 2 Cal. 244 ; *People* v. *Raynes,* 3 Id. 367 ; *Cohen* v. *Barrett,* 5 Id. 210 ; *Ward* v. *Severance,* 7 Id. 129 ; *Roberts* v. *Landecker,* 9 Id. 267 ; *State* v. *Poulterer,* 15 Id. 526.)

Mills *v.* Tukey.

II.   The rule that a mortgagee or tenant in common can acquire no title under a tax sale against his mortgagor or co-tenant, so far as it exists, comes under the doctrine of constructive fraud, and is inapplicable to the express provisions of the statute which governs this case.

The statute under which respondent's deed was executed provides, that "any deed derived from a sale of real property under this act, shall be conclusive evidence of title, except as against actual fraud, or prepayment of the taxes, and shall entitle the holder thereof to a writ of assistance from the District Court to obtain possession of such property." It is only necessary to show that the fraud which defeats a tax title against a co-tenant or a mortgagor is a constructive or legal fraud, and that a distinction amounting to a contrast exists between constructive and actual fraud, to prove that our statutes, in limiting the defect of tax titles to actual fraud alone, meant to sweep away that which was formerly created by constructive fraud.   In Blackwell on Tax Titles, 466, that commentator devotes a chapter to sales "actually and constructively fraudulent," in which he distinguishes between these as involving in the one case positive and in the other inferential fraud.   Positive fraud, he says, "of course renders the sale void." He then proceeds to declare : "Though positive frauds sometimes occur, the most numerous kind are those usually denominated constructive, or that class of fraud which may be inferred from the violation of public or private confidence ; from the privity of the purchaser with the title sought to be divested ; or on account of their being contrary to public policy." And under this middle class of persons having privity with the title, he introduces the cases of a mortgagee in possession (p. 472) and a tenant in common (p. 472), "in such case"—that is, in a case where he is a person—"whose duty it is to pay the taxes."

COPE, C. J. delivered the opinion of the Court—NORTON, J. concurring.

This is an appeal for an order granting a writ of assistance to put the plaintiff in possession of an undivided interest in certain property in the City of Sacramento.   The proceeding was instituted

under the fifth section of an Act of the Legislature, passed April 3d, 1860, entitled "An Act to provide for the Collection of Delinquent Taxes in the City and County of Sacramento." The section provides, that " any deed derived from a sale of real property under this act shall be conclusive evidence of title, except as against actual frauds and prepayment. of the taxes, and shall entitle the holder thereof to a writ of assistance from the District Court to obtain possession of such property." The sale was made by one Marshall, who was then Sheriff of Sacramento County, and the deed was executed by his deputy after the expiration of his term of office and during his absence from the State.

It is objected that the deputy had no authority to execute the deed ; and the Act of 1858, " for the relief of purchasers at sales of real estate by public officers," is referred to as sustaining the objection. The act (Sec. 1) provides, that " where lands have been or may hereafter be sold by a Sheriff, or other authorized officer, for taxes, or under an execution or order of sale, the purchaser or his assigns may be entitled to a deed, and the Sheriff or other officer who made the sale is dead, or absent from the State, or in any wise disqualified, it shall or may be lawful for the successor of the said Sheriff, or other officer, to make such deed to such purchaser, his assignee or assignees, in the same manner and with the same effect, as if made by the officer making such sale." · Under the law as it stood prior to the passage of this act, the successor of the officer making the sale had no power to execute the deed, and the effect of the act is simply to confer upon him the power to do so.  It takes nothing from the authority of the officer who made the sale ; and his power to execute the deed, either by deputy or in person, continues as before.  The object was to relieve the purchaser and not to limit the power of the officer.  In case of death or disqualification, of course the deed must be executed by the successor, and it may be executed by him in the case of absence. In the latter case, however, his authority is not exclusive, unless the absence be such as to amount to a disqualification.  The whole subject is a matter of statutory regulation, and there is nothing in the act in question operating as a repeal or modification of previous statutes.

It is objected further that at the time of the sale the parties were tenants in common of the property, and that the plaintiff was the holder of a mortgage upon the interest of the defendant.   These objections would be decisive of the case if it were not for the fact that the statute under which the sale was made gives conclusive effect to the deed, except as against actual frauds and prepayment of the taxes.  The sale was made on a judgment regularly obtained, and there is no doubt that under the statute the title passed, and that the plaintiff has a right to the possession of the property.   As a general rule, neither a tenant in common nor a mortgagee can acquire a tax title, and set it up as against his co-tenant or mortgagor, but this rule rests upon the doctrine of constructive frauds, and is not applicable in a case like the present, where the fraud must be actual.   It is possible that in equity the purchase would be regarded as a trust, and relief administered on that ground, but in this proceeding the defendant cannot avoid the effect of the deed.   He must present a proper case for equitable interference before the assistance of the Court can be invoked in his behalf. His defense is based upon the invalidity of the deed, and under the statute the deed cannot be rejected as void.

Other objections are interposed, but they are not well taken.

The order is affirmed.